MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2016 ME 76
Docket:        Han-15-126
Argued:        February 9, 2016
Decided:       May 26, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

DANIEL J. MCLEOD

v.

LOUISE M. MACUL

HUMPHREY, J.

[¶1]  Louise M. Macul appeals from a judgment entered in the District Court (Ellsworth, *Romei, J.*) granting Daniel J. McLeod's motion to modify and amending the parties' original divorce judgment by terminating the spousal support awarded to Macul.  Macul contends that the court erred and abused its discretion because it (1) concluded that a severance payment made to McLeod was irrelevant to the determination of his gross income; (2) considered impermissible factors in its determination of whether there was a substantial change in circumstances; (3) failed to consider other relevant statutory factors in arriving at a modified award; and (4) retroactively terminated McLeod's support obligation.  We vacate the amended judgment and remand for further proceedings.

## I. BACKGROUND

[¶2]   After twenty-six years of marriage, Daniel McLeod, who resides in Shanghai, China, and Louise Macul, who resides in Kuching, Malaysia, were divorced by a judgment (*Nivison, J.*) entered on August 8, 2012.  The parties had been legally separated since 2006.  In consideration of an unequal division of the parties' property, Macul was awarded $5,000 per month in general spousal support "for a term of one hundred twenty (120) months, which term may not be extended."  At the time of the divorce, McLeod listed his total income as $376,728, and Macul listed her income as $7,698, composed entirely of investment income.  Then, as now, Macul did not have any income from employment.

[¶3]  In 2014, less than two years later, McLeod filed a motion to modify the spousal support award, alleging a substantial change in circumstances because his employment was going to be terminated at the end of June 2014 as a result of corporate restructuring.  *See Ellis v. Ellis*, 2008 ME 191, ¶ 11, 962 A.2d 328; 19-A M.R.S. § 951-A(4) (2015).

[¶4]   On December 8, 2014, the court (*Romei, J.*) held a hearing on McLeod's motion to modify.  Following the hearing, the court entered an amended divorce judgment on February 13, 2015, finding a substantial change of circumstances and granting McLeod's motion to modify.  In particular, the court found that McLeod's job, which had compensated him in the amount of $366,916

at the time of the divorce and provided insurance and a pension plan, ended June 30, 2014; concluded that his one-time severance package from that employment was not "income from an ongoing source," *see* 19-A M.R.S. § 2001(5)(A) (2015); and found that McLeod acquired new employment three months after his termination but at a forty percent reduction in pay with no benefits.

[¶5] As to Macul, the court found that she "has done nothing to become self-supporting. She has significant job skills, but has made no effort to become gainfully employed." Because Macul had been employed in hospital administration and also had training as an English language teacher, the court found, "[s]he could earn $30,000 to $50,000 if she tried. She has applied for no jobs since 2012. Nor did she from the parties' separation in [2006]."[1] The court ordered a complete termination of spousal support, retroactive to July 1, 2014. Macul timely appealed.

## II. DISCUSSION

A.    Standard of Review

[¶6] Macul argues on appeal that the court erred by granting McLeod's motion to modify and terminating her spousal support award retroactively. "We

---

[1] The court stated in its order that Macul had not sought employment since the parties' separation in "2004." Evidence in the record, however, establishes that the parties were both physically and legally separated in 2006.

4

review modifications of spousal support for an abuse of discretion." *Pettinelli v. Yost*, 2007 ME 121, ¶ 11, 930 A.2d 1074.

> Review for an abuse of discretion involves resolution of three questions: (1) are factual findings, if any, supported by the record according to the clear error standard; (2) did the court understand the law applicable to its exercise of discretion; and (3) given all the facts and applying the appropriate law, was the court's weighing of the applicable facts and choices within the bounds of reasonableness.

*Id.*

[¶7] When considering a motion to modify a spousal support award, the court must engage in a two-step analysis. First, the court must determine whether the moving spouse has demonstrated a substantial change in circumstances after the divorce. *See Ellis*, 2008 ME 191, ¶ 11, 962 A.2d 328; 19-A M.R.S. § 951-A(4). Second, if the court determines that a substantial change in circumstances has been established and a modification is warranted, it must then consider the statutory factors governing spousal support in arriving at a modified award. *Pettinelli*, 2007 ME 121, ¶ 13, 930 A.2d 1074; *see* 19-A M.R.S. § 951-A(5)(A)-(Q) (2015).

B.     Substantial Change in Circumstances

[¶8] "The purpose of the substantial change in circumstances standard in the context of a motion to terminate or reduce spousal support is to prevent the court from engaging in a reevaluation of the basis for the original spousal support award." *Pettinelli*, 2007 ME 121, ¶ 14, 930 A.2d 1074 (quotation marks omitted).

The change must be a "substantial change in either the payor spouse's ability to pay or in the payee spouse's need for support." *Hale v. Hale*, 604 A.2d 38, 41 (Me. 1992). The evaluation of the payor's ability to pay must include consideration of that party's "total financial resources," *id.*, including earning potential and assets, and not simply actual earnings at the time of the hearing, *Pettinelli*, 2007 ME 121, ¶ 14, 930 A.2d 1074.

[¶9] Macul argues that the court erred as a matter of law and abused its discretion when it (1) determined that McLeod's severance payment was not gross income because it was not from an "ongoing source" and, thus, was irrelevant to its consideration of spousal support; and (2) considered impermissible factors in its determination of whether there was a substantial change in circumstances. Because Macul did not file a motion for further findings of fact pursuant to M.R. Civ. P. 52(b), we must assume the trial court "made all findings necessary to support its judgment, but only to the extent that those findings are supported by competent record evidence." *Finucan v. Williams*, 2013 ME 75, ¶ 16, 73 A.3d 1056.

[¶10] McLeod and Macul provided the only testimony at the hearing on the motion to modify. The court's findings as to McLeod's inability to pay spousal support from and after July 1, 2014, credited his testimony that for the 2014 tax year, as a result of the termination of his former employment, he received

$200,000 in salary from his former employer, together with a one-time $380,000 severance payment, and was paid $52,000 by his new employer, which was a pro rata portion of his $220,000 annual salary—all totaling $632,000. He had access to an additional $60,000 in pension and investment income, but he chose not to withdraw any money from those funds. McLeod was now remarried, his wife has income potential, and he has incurred tens of thousands of dollars in expenses for such things as golf membership fees, entertainment, travel, and his stepdaughter's private school tuition.

[¶11] As to Macul's need for support, the court found that, in spite of her "significant job skills," she "has done nothing to become self-supporting [and] has made no effort to become gainfully employed [since] the parties' separation in [2006]." These findings are directed to Macul's testimony that she had a former career in hospital administration, a field she has not worked in since the 1990s; was trained as an English language teacher; held the unpaid position of executive director of an nongovernmental organization/nonprofit museum in Malaysia; and has not been paid any income from employment since 1999. She also had "somewhere around a million dollars" in investment accounts resulting from the divorce and a condominium in Southwest Harbor, but she did not take money out of her investments for living expenses, and the condominium generated less than $500 in net rental income per year.

[¶12]  Macul's taxable income in 2013 was $90,175.  Of that sum, $60,000 resulted from spousal support payments, and the remainder consisted of dividends and capital gains generated by Macul's portion of the parties' property that was awarded to her in the 2012 divorce.  She stated that her circumstances had not changed since the divorce, and that she relied on McLeod's spousal support to pay for living expenses.

1.     Macul's Severance Package

[¶13]  Macul argues that the court erred as a matter of law in its "substantial change" determination when it found that McLeod's severance package was not "income from an ongoing source" and thus declined to include it in the calculation of McLeod's gross income or consider it as part of his ability to pay.  We review statutory interpretation de novo as a question of law.  *See Me. Sch. Admin. Dist. No. 37 v. Pineo*, 2010 ME 11, ¶ 16, 988 A.2d 987.

[¶14]  The spousal support statute, 19-A M.R.S. § 951-A (2015), lists several factors that the court must consider in its support determination, including, inter alia, the income history and income potential of each party.  Although the statute does not define "income" for the purposes of determining an award or modification of spousal support, we have looked to the definition of "gross income" from the child support statute, 19-A M.R.S. § 2001(5)(A), when

considering spousal support determinations. *See Macomber v. Macomber*, 2003 ME 1, ¶ 7, 814 A.2d 456.

[¶15] Specific to severance payments in the context of child support, we have held that, despite the introductory phrase in subsection 2001(5)(A) stating that gross income "includes income from an ongoing source," the full context of the statute "reveals that gross income . . . generally includes all payments received by a parent in the scope of employment," including "severance pay," which is income that *had* been from an ongoing source—the parent's employer—and represents a final payment of wages. *Walker v. Walker*, 2005 ME 21, ¶¶ 12-13, 868 A.2d 887.

[¶16] Here, the court concluded that McLeod's one-time severance package was not from an ongoing source and thus was not income within the meaning of the spousal support statute. Although we have not previously clarified that severance payments must be included in the calculation of gross income in the context of spousal support, we take the opportunity to do so now. Without the severance payment, McLeod's 2014 salary reflected a forty percent reduction from the salary he earned at the time of the parties' divorce ($366,000 versus $252,000[2]); with the severance payment, McLeod's 2014 salary *increased* by over

---

[2] This figure does not include the $60,000 in pension and investment income that McLeod testified he had access to but chose not to withdraw. Although that additional sum could have been, but was not, considered in the court's analysis as "income potential" pursuant to 19-A M.R.S. § 951-A(5)(E) (2015)

forty percent ($366,000 versus $632,000). Even if the severance pay is prorated and applied over a number of years going forward, some portion should be included in the calculation of McLeod's income for 2014 and, thus, be considered in determining his ability to pay.

2. Statutory Factors Impermissibly Considered

[¶17] Macul next contends that the court erred because it considered spousal support factors, specifically her employment and income potential, that existed at the time of, and thus presumably were considered in, the spousal support award in the original divorce judgment. *See* 19-A M.R.S. § 951-A(5)(D)-(E). We review a trial court's consideration and reliance on spousal support factors for abuse of discretion. *See Pettinelli*, 2007 ME 121, ¶¶ 15-17, 930 A.2d 1074.

[¶18] When determining whether there has been a substantial change in circumstances, a trial court may not engage in a reevaluation of the basis for the original award of spousal support. *See id.* ¶ 20 (concluding that the trial court abused its discretion when it "supplanted the award of general support with an award of transitional support" based on factors existing at the time of divorce); *Haag v. Haag*, 609 A.2d 1164, 1165 (Me. 1992) (vacating the trial court's

---

and 19-A M.R.S. § 2001(5)(A) (2015), Macul does not appeal the court's failure to consider this potential income source.

modification where the trial court relied on factors anticipated by the original divorce decree).

[¶19] At the time of the divorce in 2012, the parties agreed to a fixed term of general spousal support in consideration of an unequal property division. Title 19-A M.R.S. § 951-A(2)(A) provides that general support "may be awarded to provide financial assistance to a spouse with substantially less income potential than the other spouse so that both spouses can maintain a reasonable standard of living after the divorce." Macul's circumstances—her early employment history, education, training, job skills, unemployment, and lack of any income from employment since the mid-point of the parties' marriage—existed at the time of the parties' divorce in 2012. Although, as the court observed, she has done nothing to find employment or support herself since her separation from McLeod, there was no evidence presented at the hearing on McLeod's motion to support a finding that Macul's employment circumstances had changed in any way since the time of the divorce or that, in view of the unequal property division underpinning the spousal support award, the parties anticipated that she would work after the divorce.[3]

---

[3] The 2012 divorce judgment did not contain a transitional support award to support Macul's reentry into the workforce. We infer that the court implicitly recognized that she was not going to be seeking or obtaining paid employment.

[¶20]  By examining Macul's employment potential and finding that Macul "has done nothing to become self-supporting . . . has made no effort to become self-supporting . . . [and] could earn $30,000 to $50,000 if she tried," the court engaged "in the kind of 'reevaluation of the basis for the original spousal support award' that the substantial change in circumstances standard was meant to prevent. Post-judgment proceedings provide no invitation to reopen and relitigate a divorce judgment or settlement agreement . . . ."  *Pettinelli*, 2007 ME 121, ¶ 15, 930 A.2d 1074; *see also Haag*, 609 A.2d at 1165.

[¶21]  We conclude that the court abused its discretion by not including McLeod's severance package in his gross income and by impermissibly basing its finding of a substantial change in circumstances, at least in part, on Macul's unemployment when that factor had not changed since the original divorce judgment.  *See Gomberg v. Gomberg*, 2015 ME 133, ¶¶ 13-14, 125 A.3d 724 (upholding the court's finding that there was no substantial change in circumstances when the relevant financial circumstances, known at the time of divorce, had not changed in any material way).  While the evidence in the record may support a finding of a substantial change in circumstances, the court must engage in further analysis.

12

C.    Modification of Spousal Support

[¶22]   Once a court determines that there has been a substantial change in circumstances and that a modification of the spousal support is warranted, the court is obligated to consider the factors set forth in section 951-A(5)(A)-(P).  *Pettinelli*, 2007 ME 121, ¶ 13, 930 A.2d 1074.  Macul contends that the court also (1) failed to consider other relevant statutory factors in arriving at a modified award; and (2) erred  by  retroactively  terminating  McLeod's  support  obligation.    These arguments are taken in turn.

1.    Relevant Statutory Factors Not Considered

[¶23]   Macul argues that the court erred in disregarding statutory factors, such as McLeod's continued ability to pay, his access to investment and pension income,  the  length  of  the  marriage,[4]  Macul's  outdated  employment  skills,  the prohibition on paid employment imposed upon her,[5] and her age.  *See* 19-A M.R.S. § 951-A(5)(B)-(F), (P).  A court is not required to "robotically" address every statutory factor, *Bulkley v. Bulkley*, 2013 ME 101, ¶ 14, 82 A.3d 116, and we do

---

[4]   There is a rebuttable presumption that general spousal support may not be awarded for a term exceeding half the duration of a marriage if the parties were married for less than twenty years. 19-A M.R.S. § 951-A(2)(A)(1) (2015).  Here, the parties were married for twenty-six years, and thus there are no presumptive statutory limitations on the duration of spousal support.  Macul could potentially have been awarded spousal support for life.  That she agreed to only ten years of support despite the possibility of entitlement to lifetime support may be a relevant factor as the court determines on remand to what extent the award should be modified.

[5]   Macul testified that due to her immigration status, she had been, and will continue to be, unable to engage in paid employment in Malaysia.

not now impose that burden. However, the record contains no evidence that the court fully considered the parties' circumstances. *See Jandreau v. LaChance*, 2015 ME 66, ¶¶ 25-26, 116 A.3d 1237. For example, even if McLeod's income after 2014 is reduced, he still has an ability to pay some spousal support, and Macul continues to have no employment potential.

### 2. Retroactivity

[¶24] A court, in its discretion, may reduce a spousal support award retroactively to the date the application for the modification is filed. *See Roberts v. Roberts*, 1997 ME 138, ¶¶ 9, 11, 697 A.2d 62. However, we conclude that the court erred in its "substantial change" analysis by failing to consider McLeod's severance payment; should *not* have reconsidered evidence of factors that existed at the time the divorce judgment was entered; and in its "modification" determination should have considered other relevant factors. Because we remand this matter to the trial court for those reasons, we need not consider whether the court abused its discretion by terminating the award retroactively.

[¶25] On remand the court should, among other things, reassess its "substantial change" analysis and reconsider whether a reduction or retroactive termination of McLeod's support obligation after only two years of a ten-year obligation contravenes and undermines the purposes and provisions of the original divorce judgment fixing a term of general spousal support in consideration of an

unequal property division and prevents Macul from ever regaining benefits to which she might otherwise be entitled. *See Pettinelli*, 2007 ME 121, ¶ 20, 930 A.2d 1074. It is best practice that the court consider the foundation upon which the original divorce judgment was based in its analysis of whether and to what extent a modification of a spousal support award is warranted.

[¶26] Accordingly, we vacate the amended divorce judgment and remand to the trial court for further proceedings to reconsider and reassess, consistent with this decision, whether or to what extent McLeod's motion to modify should be denied or granted at all or in any respect.

The entry is:

> Amended Divorce Judgment vacated. Remanded for further proceedings consistent with this opinion.

---

**On the briefs and at oral argument:**

Daniel A. Pileggi, Esq., Roy, Beardsley, Williams & Granger, LLC, Ellsworth, for appellant Louise M. Macul

Martha J. Harris, Esq., Paine, Lynch & Harris, P.A., Bangor, for appellee Daniel J. McLeod

Ellsworth District Court docket number FM-2011-52
FOR CLERK REFERENCE ONLY